735 P.2d 1067

STATE of Idaho, Plaintiff-Respondent,

v.

Curtis QUENZER, Defendant-Appellant.

No. 16493.

Court of Appeals of Idaho.

March 23, 1987.

Bruce H. Greene, Sandpoint, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., David R. Minert, Deputy Atty. Gen., Boise, for plaintiff-respondent.

---

WALTERS, Chief Judge.

Following a bench trial, a magistrate found Curtis Quenzer guilty of knowingly driving while his license was suspended. The judgment of conviction was affirmed on appeal to the district court. Quenzer now appeals to this Court, urging that his judgment of conviction be reversed on the ground that he did not know that his license was suspended at the time of his arrest. We affirm.

The record reveals the following undisputed facts. On September 1, 1984, a Post Falls, Idaho, police officer stopped seventeen-year old Curtis Quenzer for speeding. During that stop, the officer checked the status of Quenzer's driver's license and found that it had been suspended because of numerous traffic violations.[1] Although Quenzer told the officer that he did not know that his license had been suspended, the officer arrested Quenzer.

At a subsequent trial before a magistrate, Quenzer's father testified that he and his wife had been on vacation at the time Quenzer was arrested. The father testified that during their vacation Quenzer had picked up the family mail (apparently from a post office box in Sandpoint, Idaho). Quenzer's father acknowledged that his son had signed for two registered letters, one of which contained a notice of Quenzer's license suspension from the motor vehicle bureau. However, Quenzer apparently did not pay attention to whom the mail was addressed and did not open it. Instead, Quenzer put the registered letter from the state with the other mail apparently addressed to his father, and left it at his parent's home until his parents returned from their vacation. Quenzer's father testified that he often received business mail from the east coast and that his children were instructed not to open that mail. When the father returned from vacation on September 5, he opened the registered letter containing Quenzer's notice of suspension thinking it was his own business mail.

At trial, the state did not contest Quenzer's representation that the letter remained unopened until after Quenzer's arrest. Instead, the state maintained that the fact that a registered letter had been sent to Quenzer, and that he had signed for it, was sufficient to notify him of the suspension. According to the state, that notice should make Quenzer liable for driving with knowledge that his license had been suspended—even if Quenzer did not have actual knowledge of the suspension. Quenzer argued that even though he had received the letter, he inadvertently had failed to read it and thus, did not have the requisite knowledge to be guilty.

In affirming the magistrate's decision, the district court ruled that the state did not have to prove "actual knowledge of the notification." Rather, the court concluded, it was sufficient for the state to show that Quenzer had received notice of the suspension by registered mail. Inferentially, such a ruling means that acknowledged receipt of the registered letter would impart the knowledge required for conviction in this case. Under the facts in this case, we agree that the conviction should be upheld.

Preliminarily, we note that the deprivation of the continued possession of a valid driver's license is subject to due process requirements under the fourteenth amendment to the United States Constitution. Accordingly, a notice of suspension and an opportunity to be heard are mandated whenever the state seeks to suspend a license. *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). The notice must be one reasonably calculated, under all the circumstances, to inform the affected party of the impending action and to give him an opportunity to present his objections. *Mullane v. Central Hanover*

---

1. Quenzer's license was suspended under I.C. § 49–330(a) on the ground that he was a "habitual violator" of the traffic laws, *i.e.,* he was a person "who has a driving record which shows a violation point count of eighteen (18) or more points in any consecutive twenty-four (24) month period; or twenty-four (24) or more points in any consecutive thirty-six (36) month period." Under this statute, the Idaho transportation department is authorized to establish a "violation point count system" for moving traffic violations or infractions, assigning "a value of one (1) point for less serious violations to four (4) points for more serious violations...."

*Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In the present case, however, the fact that notice was mailed and the constitutional sufficiency of that notice are not challenged by either party. There is no dispute that Quenzer physically received the notice of the suspension.

Quenzer was convicted under I.C. § 18–8001. That statute provides in part:

> *Driving without privileges.*—(1) Any person who drives or is in actual physical control of any motor vehicle upon the highways of this state *with knowledge* that his license or permit to drive is revoked or suspended in this state or any other jurisdiction is guilty of a misdemeanor.... (Emphasis added.)

As the emphasized language indicates, a person must know that his license has been suspended before he comes within the prohibitions of the code section. A historical review of the statute reveals that the element of knowledge of the suspension has not always been required. Idaho Code § 49–337 (the predecessor to I.C. § 18–8001) at one time did not require such a showing. *See* I.C. § 49–337 (1963). Under that statute, driving with a canceled, suspended, or revoked license was apparently *per se* illegal regardless of the driver's knowledge.[2] However, in 1983, former I.C. § 49–337 was repealed and replaced with a new I.C. § 49–337 which added language requiring the person's knowledge of the suspension. 1983 Idaho Sess. Laws, ch. 145, § 7, p. 367; 1983 Idaho Sess. Laws (1st Ex. Sess.) ch. 3, § 7, p. 8. Subsequently, I.C. § 49–337 was repealed in 1984 and its provisions, still containing the "knowledge" language, were enacted as I.C. § 18–8001. 1984 Idaho Sess. Laws, ch. 22, § 2, p. 25. We believe these changes in wording in the statute clearly show a legislative intent that knowledge be required as an element of the offense. Thus we conclude that unless a person has knowledge that his license has been suspended, he cannot be guilty of violating I.C. § 18–8001. *See City of Albuquerque v. Juarez,*

93 N.M. 188, 598 P.2d 650 (N.M.Ct.App. 1979); *In Re Hayes,* 69 Cal.Rptr. 310, 442 P.2d 366 (1968); *In Re Murdock,* 68 Cal.2d 313, 66 Cal.Rptr. 380, 437 P.2d 764 (1968).

We must next appraise the interrelationship between the notice that was given to Quenzer and the requirement of knowledge mandated by the statute. We assume that, ordinarily, people who receive a letter addressed to themselves, especially a registered letter for which they must sign an acknowledgement of receipt, will read that letter and therefore be apprised of its contents. In many cases dealing with a notice of suspension of a driver's license, the courts implicitly seem to recognize this. *See State v. Baltromitis,* 5 Conn.Cir. 72, 242 A.2d 99 (1967); *State v. Curtis,* 73 N.C.App. 248, 326 S.E.2d 90 (1985); *State v. Thomas,* 25 Wash.App. 770, 610 P.2d 937 (1980); *State v. Collova,* 79 Wis.2d 473, 255 N.W.2d 581 (1977). However, we recognize that sometimes a notice does not reach the intended recipient, or as the instant case demonstrates, the recipient receives, but for some reason, does not read the notice. As we have indicated, it is driving with knowledge of a suspension that produces liability under I.C. § 18–8001.

However, we cannot say that in all cases the state must prove more than that notice as required by statute was mailed to the affected party. This is so because, while receipt does not necessarily prove knowledge, receipt, especially of a registered letter, is closely related to the element of knowledge. *State v. Collova, supra.* Some courts have held that in certain circumstances actual notice is synonymous with knowledge. *Jefferson County Bank v. Erickson,* 188 Minn. 354, 247 N.W. 245 (1933). As a practical matter, we also recognize that there is no way that the state can force a party to read the mail which he receives. Accordingly, we conclude that compliance with the statutory requirements for notifying a party of the license suspension creates an inference that the party has received that notice and, additionally, that

---

2. Under statutes similar to I.C. § 49–337 (1963), the courts in at least two states have held that the element of knowledge or scienter is implicitly required even though their statutes did not specifically prescribe such knowledge. *See Jeffcoat v. State,* 639 P.2d 308 (Alaska Ct.App.1982); *State v. Collova,* 79 Wis.2d 473, 255 N.W.2d 581 (1977).

the party is knowledgeable of the suspension.[3] That inference is particularly strong where, as here, the addressee has acknowledged receipt of a registered letter. The inference is rebuttable. If the party does not receive notice or does not have knowledge of the suspension that is contained in that notice, then the party may present proof that notice was not received or that knowledge of the suspension is for some other reason lacking. *State v. Curtis, supra; City of Albuquerque v. Juarez, supra; State v. Collova, supra.* However, a defendant cannot rebut the inference by showing that his own unreasonable, intentional, or negligent conduct prevented him from receiving the notice or learning of its contents. *See Jeffcoat v. State,* 639 P.2d 308 (Alaska Ct.App.1982); *City of Albuquerque v. Juarez, supra; State v. Collova, supra.*

Here, Quenzer attempted to rebut the inference that he had knowledge of the fact that his license was suspended. Although Quenzer established that he had not opened the letter, the evidence was clear that his asserted lack of knowledge was the result of his own clearly negligent actions. The letter was certified, it was sent to Quenzer, it reached him. There is simply nothing more that the state or society could have done—other than to read the letter to Quenzer. Such a requirement would go beyond the bounds of reason.

As a final matter, we note that our conclusion in this case does not necessarily address the situation where a defendant is prevented, through no fault of his own, from receiving a notice or from having a reasonable opportunity to learn the contents of the notice. The judgment of conviction is affirmed.

BURNETT and SWANSTROM, JJ., concur.

---

**3.** *See* I.C. § 49–330, requiring immediate notification to the licensee in writing and providing an opportunity for hearing. We also note that the statute does not require notification by registered mail. However, any distinction between notice by regular mail, as opposed to registered mail, is not at issue in this case.