**Certiorari Denied, September 24, 2012, No. 33,764**
**Certiorari Denied, September 20, 2012, No. 33,784**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-105**

**Filing Date: July 27, 2012**

**Docket No. 30,497**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**STEVEN SHAWN VALINO,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**CASTILLO, Chief Judge.**

**{1}**    Defendant was convicted of battery upon a health care worker pursuant to NMSA 1978, Section 30-3-9.2(E) (2006). On appeal, he makes a number of arguments. We agree with Defendant that the jury instruction listing the elements for conviction of battery on a health care worker was deficient because it did not include the requirement of knowledge.

1

Accordingly, we reverse and remand for a new trial. We affirm on two of the other issues raised by Defendant and do not reach the remaining issues.

**BACKGROUND**

**{2}** Defendant's conviction stems from an incident that occurred at the San Juan Regional Medical Center (Medical Center). On the afternoon of August 19, 2009, police officers brought Defendant, who was intoxicated, to the Medical Center. No charges were filed by police at the time, and Defendant was evaluated by nurses in the emergency department. Although the medical staff recommended no treatment, it was hospital policy that intoxicated persons are not to be released. The doctor who examined Defendant ordered that Defendant could be released "under the supervision of somebody sober." The Medical Center had contacted his parents to pick him up. After the police officers left, a member of the nursing staff asked Link Roberts, a security supervisor at the Medical Center, to oversee Defendant while he was waiting to be picked up. Defendant "was verbally communicative about his desire to leave" the Medical Center and kept trying to leave, so Roberts called in a security officer under his command, Steven O'Brien, to help him manage Defendant. At one point, the two security guards (the Guards) lifted Defendant back onto a bed. Defendant then began flailing his arms and punched O'Brien in the chest with his left fist.

**{3}** Defendant was charged with battery upon a health care worker under Section 30-3-9.2(E). Before trial, Defendant filed a motion to dismiss, making three arguments: (1) that O'Brien was not a health care worker as defined by the Code; (2) that Defendant had no reason to know or believe that O'Brien was a health care worker; and (3) that the battery charge violated the policy of the New Mexico Detoxification Reform Act (DRA), NMSA 1978, §§ 43-2-1 to -23 (1949, as amended through 2005), that bars prosecution of an intoxicated person. *See* § 43-2-3. The district court denied the motion.

**{4}** At trial, Defendant sought a jury instruction on either or both self-defense and unlawfulness. The district court gave the instruction on unlawfulness but not on self-defense. The jury found Defendant guilty of battery upon a health care worker.

**DISCUSSION**

**{5}** Defendant makes several arguments. The dispositive issue relates to the deficiency in the jury instruction and, based on this, we reverse and remand for a new trial. However, Defendant makes two arguments that would have resulted in dismissal of his entire case had we found in his favor. We address these arguments first. In this regard, Defendant contends that his actions were protected by the DRA and that the district court erred in denying his motion to dismiss based on the argument that a security guard is not a health care worker. We then turn to his contentions about the jury instructions. Defendant asserts, and we agree, that fundamental error occurred when the district court failed to instruct the jury that a conviction for battery on a health care worker required the element of knowledge that the victim was a health care worker. Because we are reversing as to this issue, we next turn to

2

Defendant's argument that there was not substantial evidence presented at trial that the Guards were acting lawfully when they restrained him. We consider this argument in order to determine whether retrial would violate principles of double jeopardy. Defendant's remaining issues relate to the jury instruction he tendered on self-defense and his claim that his counsel was ineffective. We address Defendant's contentions in the above order and begin with his argument regarding the DRA.

## A.    DRA

**{6}**    According to Defendant, the DRA bars prosecution in this situation for a battery committed while he was under the influence of alcohol because the policy of the DRA is to encourage treatment and avoid criminal prosecution. He argues that a felony charge in this case was inappropriate because "those in charge of taking care of an intoxicated person should show more circumspection."

**{7}**    "The issue of whether the DRA precludes prosecution of intoxicated persons . . . for battery upon a health care worker is a question of statutory interpretation, which this Court reviews de novo." *State v. Tsosie*, 2011-NMCA-115, ¶ 13, 150 N.M. 754, 266 P.3d 34. "Our ultimate goal in statutory construction is to ascertain and give effect to the intent of the Legislature." *Id.* (internal quotation marks and citation omitted). "Under the plain meaning rule of statutory construction, when a statute contains language [that] is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *State v. Rivera*, 2004-NMSC-001, ¶ 10, 134 N.M. 768, 82 P.3d 939 (alteration, internal quotation marks, and citation omitted).

**{8}**    Defendant speculates that the police officer's intent in taking Defendant to the Medical Center was to help him in his inebriated state, and he argues that the ensuing fight with the Guards was the type of struggle one would expect from an intoxicated person whose actions should be protected by the DRA. Under the DRA, it is the policy of the State to protect "intoxicated and incapacitated persons" from being "subjected to criminal prosecution[s]." Section 43-2-3. However, the DRA is intended to protect people from criminal punishment "solely for being intoxicated." *State v. Correa*, 2009-NMSC-051, ¶ 18, 147 N.M. 291, 222 P.3d 1. "While intoxication itself is not criminal, any criminal offenses committed while an accused is intoxicated are still punishable under the Criminal Code." *Id.* ¶ 19. "Our Court's reasoning that '*any criminal offenses* committed while an accused is intoxicated are still punishable under the Criminal Code' encompasses the criminal offense of battery upon a health care worker." *Tsosie*, 2011-NMCA-115, ¶ 16 (quoting *Correa*, 2009-NMSC-051, ¶ 19).

**{9}**    Defendant concedes the above points but argues that, in this particular situation, the Guards somehow exceeded their caretaking role while Defendant was awaiting his parents' arrival. We see nothing unique in these circumstances and nothing to contradict the clear instruction from *Correa* and *Tsosie* that any criminal offense committed while the actor is intoxicated is still punishable. As the Court warned in *Correa*, too expansive a reading of

the DRA "would mean that an accused would not be criminally liable for murder, burglary, assault, or battery if he was intoxicated when he committed the offense." 2009-NMSC-051, ¶ 16. As we said in *Tsosie*, the defendant "was not prosecuted for intoxication itself, but rather for a battery allegedly committed while he was intoxicated." 2011-NMCA-115, ¶ 16. We see no meaningful distinction between this case and the circumstances in *Correa* and *Tsosie*. Accordingly, we conclude that the DRA does not protect Defendant here from a charge of battery, and the district court was correct to reject the argument.

## B.      Health Care Worker Statute

**{10}** Defendant contends that the district court erred in denying his motion to dismiss based on his argument that O'Brien was not a health care worker. In his motion to dismiss, Defendant acknowledged that O'Brien was employed by the Medical Center, and thus the fact of O'Brien's employment status was undisputed. We are presented with an issue of statutory interpretation and our review is de novo. *Tsosie*, 2011-NMCA-115, ¶ 13. The issue of whether a security guard is a "health care worker" as defined in the battery upon health care personnel statute is purely a legal question. *See State v. Johnson*, 2009-NMSC-049, ¶ 9, 147 N.M. 177, 218 P.3d 863.

**{11}** The statute criminalizing battery against a health care worker defines "health care worker" in pertinent part as one who is "an employee of a health [care] facility." Section 30-3-9.2(A)(2). In spite of his recognition that O'Brien is an employee of a health care facility, Defendant argues that O'Brien does not come under the definition of "health care worker" because he is not in the medical profession, his employment is not for the purpose of providing medical care, he is not licensed in any medical field, and his employment duties relate to security, not medicine. We look for direction from two New Mexico cases.

**{12}** In *Johnson*, the New Mexico Supreme Court held that security guards working in schools are school employees within the statute criminalizing battery upon school personnel. *Johnson*, 2009-NMSC-049, ¶ 17. In coming to this conclusion, the Court observed "two important rules of construing criminal statutes, the plain meaning rule and the rule that criminal statutes should be construed to further their purpose[.]" *Id.* (internal quotation marks and citation omitted). The Court noted that "nothing in the statute indicates the Legislature intended something other than the ordinary meaning of 'employee' to apply." *Id.* ¶ 11; *see State v. Smith*, 2009-NMCA-028, ¶ 13, 145 N.M. 757, 204 P.3d 1267 (stating that "where a statute specifically defines a term, we interpret the statute according to those definitions, because those definitions reflect legislative intent"). The Court determined that the purpose of the statute was "to decrease incidents of violence at schools by enhancing the penalties for crimes committed against 'employees' of the school." *Johnson*, 2009-NMSC-049, ¶ 15. Using the same analysis, we conclude that there is nothing in Section 30-3-9.2(A)(2)  indicating that the Legislature intended something other than the ordinary meaning of "employee" to apply. Further, our review of the statute supports the determination that its purpose is to protect those providing health care services. *See Tsosie*, 2011-NMCA-115, ¶ 19 (stating rules the appellate courts abide by when interpreting

4

statutes). We also look to *Tsosie* where we determined that the victim of an attack by a patient was a health care worker because he was employed by a health care facility as defined by the statute at the time of the incident. *Id.* ¶ 29. We therefore hold that because O'Brien was an employee of the Medical Center, he is considered a "health care worker" under Section 30-3-9.2(A)(2). We affirm the district court on this issue.

## C.     Knowledge Requirement for Battery Upon a Health Care Worker

**{13}**    Defendant next argues that the district court improperly instructed the jury on the elements of battery upon a health care worker by omitting the requirement that Defendant have knowledge that the victim was a health care worker. Defendant admits that he did not tender the proper instruction at trial and therefore failed to preserve the argument; he asks us to review the issue for fundamental error. *See State v. Cunningham*, 2000-NMSC-009, ¶ 8, 128 N.M. 711, 998 P.2d 176.

**{14}**    Fundamental error occurs when a court fails to instruct a jury on an essential element. *See State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72. "Fundamental rights of an accused . . . are implicated where the jury is permitted to return a conviction without having been instructed on an essential element of [a] crime." *State v. Castro*, 2002-NMCA-093, ¶ 2, 132 N.M. 646, 53 P.3d 413 (alteration, internal quotation marks, and citation omitted). However, "when a jury's finding that a defendant committed the alleged act . . . necessarily includes or amounts to a finding on an element omitted from the jury's instructions, any doubt as to the reliability of the conviction is eliminated and the error cannot be said to be fundamental." *State v. Orosco*, 113 N.M. 780, 784, 833 P.2d 1146, 1150 (1992). "We determine whether a reasonable juror would have been confused or misdirected by the erroneous instructions." *Castro*, 2002-NMCA-093, ¶ 2. The propriety of a court's decision on whether to give a jury instruction is a mixed question of law and fact that we review de novo. *See State v. Munoz*, 1998-NMSC-041, ¶ 8, 126 N.M. 371, 970 P.2d 143. "When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instruction." *State v. Romero*, 2005-NMCA-060, ¶ 8, 137 N.M. 456, 112 P.3d 1113.

**{15}**    We look to Section 30-3-9.2(E) for the elements of battery upon a health care worker: "Battery upon a health care worker is the unlawful, intentional touching or application of force to the person of a health care worker who is in the lawful discharge of the health care worker's duties, when done in a rude, insolent[,] or angry manner." Knowledge of the victim's identity is not expressly included in the statute as an element of battery upon a health care worker. In *State v. Nozie*, 2009-NMSC-018, ¶¶ 22, 26, 30, 146 N.M. 142, 207 P.3d 1119, the New Mexico Supreme Court held that knowledge of a victim's identity as a police officer is an essential element of battery upon a peace officer, even though it is not included in the text of the statute. The Court reaffirmed the proposition that we "presume criminal intent is an essential element of the crime unless it is clear from the statute that the [L]egislature intended to omit the *mens rea* element." *Id.* ¶ 26 (alteration in original) (internal quotation marks and citation omitted). The *Nozie* Court also noted that the penalty

for battery upon a peace officer raised a simple misdemeanor battery into a fourth degree felony. *See id.* Thus, requiring a knowledge element for battery upon a peace officer makes sense in order to distinguish that more serious offense from "strict liability or 'public welfare crimes' to which no 'moral condemnation and social opprobrium' typically attach and for which the penalties are 'relatively slight.'" *Id.* (quoting *Santillanes v. State*, 115 N.M. 215, 222, 849 P.2d 358, 365 (1993)). The Court concluded that the Legislature "did not intend for punishment to be imposed without knowledge of the victim's status as a peace officer." *Id.* The Court proceeded to modify the uniform jury instruction for a charge of battery upon a peace officer to add the scienter requirement. *Id.* ¶ 31.

**{16}** Here, Defendant argues that the same requirement should carry over to battery upon a health care worker. We agree. When the victim of a battery is a health care worker, a misdemeanor battery charge is elevated to a fourth degree felony, as it is with respect to the crime of battery on a peace officer. *See* § 30-3-9.2(E); *Nozie*, 2009-NMSC-018, ¶ 26. When determining whether a crime falls into the category of "strict liability" or "public welfare" infractions, one factor to consider is "[t]he severity of the punishment provided for the crime[.]" 1 Wayne R. LaFave, *Criminal Law* § 5.5(a) at 383-84 (2d ed. 2003). "Other things being equal, the greater the possible punishment, the more likely some fault is required; and, conversely, the lighter the possible punishment, the more likely the [L]egislature meant to impose liability without fault." *Id.* at 384; *see Staples v. United States*, 511 U.S. 600, 616 (1994) ("[T]he cases that first defined the concept of the public welfare offense almost uniformly involved statutes that provided for only light penalties such as fines or short jail sentences, not imprisonment in the state penitentiary."). We have previously held that a reviewing court "must be sure that the penalties associated with a felony conviction are imposed only in response to an act done with at least the minimum culpable state of mind." *Nozie*, 2009-NMSC-018, ¶ 26 (internal quotation marks and citation omitted).

**{17}** In the case before us, the heightened penalty for battery upon a health care worker triggers our concern, as stated in *Nozie*, that the Legislature intended for a defendant to act with knowledge of the victim's identity before facing a felony conviction for battery upon a health care worker. It follows, then, that the jury was permitted to find Defendant guilty without considering an essential element of the crime—Defendant's knowledge of the victim's status as a health care worker—thus creating an unfair result. *Cf. State v. Gonzalez*, 2005-NMCA-031, ¶ 20, 137 N.M. 107, 107 P.3d 547 (holding the result unfair and constituting fundamental error where the jury was allowed to determine guilt without finding the essential element of knowledge). We conclude that the reasoning of *Nozie* extends to the crime of battery upon a health care worker. Here, knowledge is a required element for the crime of battery upon a health care worker, and it is not apparent that the jury considered the missing element as the jury did in *Orosco*. Consequently, we conclude that the failure to instruct the jury on the essential element of knowledge was fundamental error. Because we are holding that the element of knowledge should be included as an element in the jury instruction for battery upon a health care worker, we reverse this case and remand for a new trial.

6

**D.     Substantial Evidence Regarding Lawfulness of O'Brien's Actions**

**{18}**     As we have previously mentioned, based on our reversal of Defendant's conviction, we address his argument regarding the sufficiency of the evidence in order to determine whether retrial would violate principles of double jeopardy. *See State v. Dowling,* 2011-NMSC-016, ¶ 18, 150 N.M. 110, 257 P.3d 930 (undertaking a sufficiency of the evidence inquiry in order to "ascertain whether double jeopardy protections are implicated by retrying Defendant" following reversal of his conviction). Defendant contends that the State failed to provide substantial evidence that O'Brien was acting lawfully while he restrained Defendant.  He points to the jury instruction listing the elements of the crime and argues that the State failed to prove the second element:  that O'Brien "was a health[ ]care worker in the lawful performance of his health[ ]care duties[.]"   For a question of sufficiency of the evidence, "we view the evidence in the light most favorable to the [s]tate, resolving all conflicts and indulging all permissible inferences to uphold a verdict of conviction." *State v. Sanders*, 117 N.M. 452, 456, 872 P.2d 870, 874 (1994).

**{19}**     The jury was instructed that the State was required to prove that O'Brien "was a health[ ]care worker in the lawful performance of his health[ ]care duties[.]"  Section 30-3-9.2(A)(3) defines the phrase "in the lawful discharge" of the health care worker's duties as being "engaged in the performance of the duties of a health care worker."  Evidence was presented that Defendant was brought to the Medical Center under the DRA, which authorizes a police officer to have an intoxicated person committed to a treatment facility when the police officer has probable cause to suspect that the person "is unable to care for the person's own safety[.]" Section 43-2-8(A)(2). The intoxicated person "shall be retained at the facility . . . until discharged."  Section 43-2-8(C).  A person may be held for up to seventy-two hours, but must be released if his blood-alcohol content reaches zero or "there is no probable cause to believe the person remains at risk of physical harm to himself or another[.]"  Section 43-2-8(E).

**{20}**     Here, evidence was presented to show that O'Brien had the authority to restrain Defendant.  O'Brien testified that it is the procedure and policy of the Medical Center to hold an intoxicated person because of potential liability of the hospital regarding premature release of intoxicated people who present safety concerns.  O'Brien testified that he was acting under the direction of medical staff, who had determined that Defendant was not free to be released and had requested that the Guards restrain Defendant until his parents arrived to pick him up.  The Guards' job description includes detaining those brought in for detoxification evaluations.  The Guards testified that they repeatedly told Defendant that he must wait in a bed for his parents to pick him up.  When Defendant tried to leave, the Guards restrained him.  We conclude that sufficient evidence existed for a jury to find that O' Brien was an employee of the Medical Center and, as such, he was a health care worker.  Additionally, there was sufficient evidence for the jury to conclude that he was in the lawful performance of his duties in that regard.  O'Brien had been directed to prevent Defendant from leaving the Medical Center until his parents came to pick him up, and O'Brien was carrying out these duties.

**E.      Remaining Issues**

**{21}**    Defendant also argues that the court erred in failing to include the tendered self-defense instruction, that his counsel was ineffective by not including the element of knowledge in the battery instruction and in failing to request a mistake of fact instruction. Because we are reversing Defendant's conviction and remanding for a new trial, we need not consider these arguments.  As to the self-defense instruction, there is a question regarding whether this argument was even preserved.  On retrial, Defendant can develop this issue as he desires.  Similarly, Defendant's claims that his counsel was ineffective need not be considered as those claims become moot in light of the grant of a new trial.  In light of this disposition, we need not consider Defendant's remaining issues.

**III.     CONCLUSION**

**{22}**    We hold that knowledge of the victim's identity as a health care worker is an essential element of battery on a health care worker. Currently there are no jury instructions regarding this crime, and we ask that the Supreme Court refer this matter to the appropriate committee to assess whether uniform jury instructions are necessary for this and the related crimes set out in NMSA 1978, Section 30-3-9 (1989) (assault; battery; school personnel), and NMSA 1978, Section 30-3-9.1 (2001) (assault; battery; sports officials). We reverse the verdict below and remand for proceedings consistent with this Opinion.

**{23}    IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**CYNTHIA A. FRY, Judge**

**Topic Index for *State v. Valino*, No. 30,497**

**APPEAL AND ERROR**
Fundamental Error
Remand
Substantial or Sufficient Evidence

**CONSTITUTIONAL LAW**
Double Jeopardy

**CRIMINAL LAW**
Battery
Elements of Offense
Intoxication

**CRIMINAL PROCEDURE**
Self-Defense

**JURY INSTRUCTIONS**
Criminal Jury Instruction
Improper Jury Instruction

**STATUTES**
Interpretation